IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA COLLECTION SERVICES INC. OF SACRAMENTO, a Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>CENTRAL SIERRA CONSTRUCTION, INC., a Nevada Corporation,<br><br>    Defendant.<br>_____/<br><br>CENTRAL SIERRA CONSTRUCTION, INC., a Nevada Corporation, on behalf of itself and all others similarly situated,<br><br>    Cross-Claimant/Defendant,<br><br>  v.<br><br>PRO GROUP MANAGEMENT, INC., a Nevada Corporation; BUILDERS' ASSOCIATION OF WESTERN NEVADA; and BUILDERS' ASSOCIATION OF WESTERN NEVADA SELF INSURED GROUP,<br><br>    Cross-Defendants.<br>_____/ | No. 2:06-CV-01899 JAM DAD<br><br>ORDER DENYING CENTRAL SIERRA'S MOTION FOR SUMMARY JUDGMENT AND GRANTING CROSS-DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT |

1

Defendant and third-party complainant Central Sierra Construction, Inc. ("Central Sierra") brings this motion for summary judgment against Cross-Defendants Pro Group Management Inc. ("Pro Group"), Builders' Association of Western Nevada ("BAWN"), and Builders' Association of Western Nevada Self Insured Group ("BAWNSIG") (collectively "Cross-Defendants") pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Cross-Defendants filed a cross-motion for summary judgment.  For the reasons set forth below, Central Sierra's motion is DENIED and Cross-Defendants' cross-motion is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Central Sierra is a Nevada construction company that sometimes performs work in California.  BAWN is a non-profit construction trade association composed of builder and associate members providing services for the building industry.  BAWN sponsors a workers' compensation insurance plan called BAWNSIG. Third-party defendant Pro Group administers BAWNSIG.

On December 16, 2002, Central Sierra applied for workers' compensation insurance through BAWNSIG.  It received a certificate of insurance from Pro Group for the period of December 31, 2002 through January 1, 2004.  Central Sierra's BAWNSIG policy (the "policy") provided it with workers' compensation coverage for its Nevada operations.  According to

2

Cross-Defendants, the policy also provided coverage for Central Sierra's Nevada hired/based employees performing temporary work in California, so long as other applicable procedures for obtaining that coverage were satisfied, including having these employees complete and sign a form titled "Election for Nevada Workers' Compensation Coverage For Out-Of-State Injury."

During the insuring period, Central Sierra employees performed work in California.  On January 1, 2003, Central Sierra decided to stop paying workers' compensation premiums to California.[1]  Some of Central Sierra's Nevada hired/based employees, however, continued to perform work in California.  On March 4, 2004, the California State Compensation Insurance Fund ("SCIF") wrote to Central Sierra questioning whether the company had maintained California worker's compensation coverage, as required by California law, in 2002 and 2003.  The letter states that Central Sierra has failed to report payroll in California since January 1, 2003.  The letter also states that SCIF had contacted Pro Group, which was unable to provide proof that Central Sierra's Nevada hired/based employees working in California are covered under a certificate of insurance issued by Pro Group.  On March 5, 2004, Robert Vogel, Pro Group's vice

---

[1] Central Sierra does not dispute that it paid California workers' compensation premiums in the past while possessing Nevada workers' compensation coverage.

president of operations, wrote a letter to SCIF stating that "Pro-Group Management, as the plan administrator for [BAWNSIG], has insured Central Sierra Construction Inc., [sic] for all temporary work in the State of California for their Nevada hired/based employees." Unconvinced that Central Sierra's coverage through BAWNSIG satisfied California law, however, SCIF audited Central Sierra for its operations from June 1, 2002 to June 1, 2003 and demanded that Central Sierra pay approximately $280,000 in unpaid insurance premiums, plus interest.

On August 9, 2006, SCIF's collection agency filed suit against Central Sierra in Sacramento Superior Court. On August 23, 2006, Central Sierra removed the case to this Court on the basis of diversity. On September 5, 2006, Central Sierra filed a third-party complaint against Cross-Defendants. On December 6, 2007, Central Sierra filed an amended complaint, alleging claims for breach of contract, misrepresentation and indemnification, seeking to recover from Cross-Defendants the amount claimed by SCIF. On April 4, 2008, Central Sierra filed a motion for summary judgment. On June 18, 2008, Cross-Defendants filed a cross-motion for summary judgment.

## II. OPINION

A.  <u>Legal Standard</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits

4

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof on an issue at trial, the movant's burden may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. "Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006) (internal quotation marks omitted).

If the moving party sustains its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103

(9th Cir. 2000). Summary judgment is appropriate if, viewing the evidence and the inferences therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

B.   Choice of Law

Cross-Defendants maintain that Nevada law governs this insurance dispute. Therefore, before reaching the merits of the cross-motions for summary judgment, the Court must conduct a choice-of-law analysis to determine whether California or Nevada law governs the substantive issues raised in this case. In a diversity action, federal courts sitting in California must apply the choice-of-law rules of California. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Estate of Darulis v. Garate, 401 F.3d 1060, 1062 (9th Cir. 2005). In California, courts apply a three-part governmental interest test. Estate of Darulis, 401 F.3d at 1062. Under this test, a court must first consider whether the two states' laws actually differ; if so, the court then examines each state's interest in applying its own law to determine whether there is a "true conflict"; and if each state has a legitimate interest, the court must compare the extent to which each state's interests will be impaired if the other state's law is applied. Id. This

choice of law analysis embodies the presumption that California law applies unless the proponent of foreign law can show otherwise. Browne v. McDonnell Douglas Corp., 504 F.Supp. 514, 517 (N.D. Cal. 1980) ("Under the government interest analysis, California will apply its own law unless it is shown that there is a compelling reason to displace forum law."); see also McGhee v. Arabian American Oil Co., 871 F.2d 1412, 1422 (9th Cir. 1989) (The burden is on the party seeking to invoke foreign law; California applies its own rule of decision unless a party litigant properly invokes the law of a foreign state.). "A party advocating application of foreign law 'must demonstrate that the [foreign] rule of decision will further the interest of that foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.' " McGhee, 871 F.2d at 1422 (quoting Hurtado v. Superior Court, 11 Cal.3d 574, 581 (1974)). Here, because Cross-Defendants did not show that a conflict exists between the laws of California and Nevada or that the application of Nevada law would further Nevada's interests, the Court will apply the substantive law of California to resolve this insurance dispute.

C.   Claim One: Breach of Contract

Cross-Defendants argue that summary judgment is appropriate with respect to Central Sierra's breach of contract claim because Central Sierra cannot demonstrate that the policy was

breached, nor can it demonstrate that it incurred damages as a result of any alleged breach.

Under California law, interpretation of an insurance policy is a question of law.  <u>Waller v. Truck Ins. Exchange, Inc.</u>, 11 Cal.4th 1, 18 (1995).  While insurance contracts may have special attributes, they are nevertheless contracts to which the ordinary rules of contract interpretation apply.  <u>Bank of the West v. Superior Court</u>, 2 Cal.4th 1254, 1264 (1992).  The essential elements of a breach of contract action are: (1) the existence of a contract; (2) the plaintiff's performance of the contract or excuse for nonperformance; (3) the defendant's breach; and (4) the resulting harm to the plaintiff.  See <u>Careau & Co. v. Security Pacific Business Credit, Inc.</u>, 222 Cal.App.3d 1371, 1388 (1990).

In the present case, Central Sierra argues that Cross-Defendants breached the policy by failing to provide coverage for its Nevada hired/based employees performing temporary work in California.  In support of its argument, Central Sierra points to SCIF's March 4, 2004 letter stating that Pro Group was unable to provide proof that Central Sierra's Nevada hired/based employees performing temporary work in California were covered under a certificate of insurance issued by Pro Group.  Central Sierra maintains that it purchased the policy from Pro Group, in part, to ensure that it did not have to pay California workers'

compensation premiums for its Nevada hired/based employees performing temporary work in California.  Cross-Defendants counter by arguing that Central Sierra cannot demonstrate that the policy was breached because Central Sierra's Nevada hired/based employees were covered under the policy for injuries related to work performed in California.  In support of their argument, Cross-Defendants point to undisputed evidence in the record indicating that two of Central Sierra's Nevada hired/based employees were paid for claims made under the policy for injuries related to temporary work performed in California.  According to Cross-Defendants, Central Sierra owes the back premiums claimed by SCIF because it failed to verify its obligations under the workers' compensation laws of California, namely to either pay workers' compensation premiums to California or obtain an exemption from such premiums with the California Contractors' Licensing Board ("CLB"),[2] not because coverage did not exist under the policy.  Cross-Defendants maintain that, contrary to Central Sierra's assertion, nothing in the policy relieves Central Sierra from complying with the

---

[2] In California, an out-of-state contractor can file a form titled "Exemption From Workers' Compensation" with the Contractors' Licensing Board.  One of the boxes states "I am an out-of-state contractor, and I do not hire employees who reside in California."  The other box states "I do not employ anyone in a manner subject to the Workers' Compensation laws of California."

workers' compensation laws of California.  The Court finds Cross-Defendants' argument persuasive.  In short, Central Sierra's breach of contract claim fails because it did not sustain its burden on the element of breach.  There is no evidence in the record demonstrating that Cross-Defendants breached any obligation under the policy.  Central Sierra, for instance, did not point to any specific language in the policy indicating that it did not have to comply with the workers' compensation laws of California.  Nor did Central Sierra point to any evidence in the record indicating that its Nevada hired/based employees were not covered under the policy for injuries related to temporary work performed in California. Accordingly, the Court grants summary judgment in favor of Cross-Defendants on Central Sierra's breach of contract claim.

D.   Claim Two: Misrepresentation

Cross-Defendants argue that summary judgment is appropriate with respect to Central Sierra's misrepresentation claim because Central Sierra cannot demonstrate that Cross-Defendants made any material misrepresentations, nor can Central Sierra demonstrate that its reliance on any alleged misrepresentations was justified.[3]

---

[3] Here, Central Sierra's misrepresentation claim includes allegations of intentional misrepresentation and negligent misrepresentation.

The elements of a cause of action for intentional misrepresentation in California are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  <u>Agosta v. Astor</u>, 120 Cal.App.4th 596, 603 (2004).  The elements of a cause of action for negligent misrepresentation in California are well established.  "To prevail on a cause of action for negligent misrepresentation, the insured must show that the insurer misrepresented to the insured a past or existing material fact without reasonable grounds for believing it to be true.  And the insurer must have intended to induce the insured's reliance on the misrepresentation, with the insured ignorant of the truth and damaged by justifiable but erroneous reliance on the misrepresentation."  <u>Rios v. Scottsdale Ins. Co.</u>, 119 Cal.App.4th 1020, 1028 (2004).

In the present case, Central Sierra argues that Pro Group falsely represented that its Nevada hired/based employees performing temporary work in California would be covered under the policy and that it no longer had to pay workers' compensation premiums to California.  In support of its argument, Central Sierra offers the declarations of its General Manager, Steve Whitfield ("Whitfield"), averring that Central

11

Sierra entered into the insurance contract with Cross-Defendants based on Pro Group's representation that the policy covered Central Sierra's Nevada hired/based employees performing temporary work in California.  According to Whitfield, Pro Group represented that Central Sierra no longer needed to pay workers' compensation premiums to California because the policy provided coverage for Central Sierra's employees performing temporary work in California.  Whitfield further avers that Pro Group represented that all it needed to do to ensure that its Nevada hired/based employees performing temporary work in California would be covered under the policy was to have these employees complete and sign a form titled "Election for Nevada Workers' Compensation Coverage For Out-Of-State Injury."  Finally, Whitfield avers that Pro Group never told Central Sierra to continue to maintain California workers' compensation insurance. Cross-Defendants, for their part, offered the declaration of a Pro Group Senior Account Executive, Michele Whaley ("Whaley"), averring that she told Nancy Green, the Office Manager of Central Sierra, that the policy provided workers' compensation coverage for Central Sierra hired/based employees performing temporary work in another state, so long as other applicable procedures for obtaining that coverage were satisfied. According to Whaley, she never told Central Sierra that it did not have an obligation to verify whether or not the other states

in which it chose to operate (such as California) had independent requirements regarding workers' compensation coverage.  In fact, Whaley avers that she encouraged Central Sierra to continue to maintain California workers' compensation coverage in the event that it was required.

Even assuming for the sake of argument that Pro Group made the representations set forth in Whitfield's declarations, the Court nonetheless finds that Central Sierra's reliance on these representations was unreasonable as a matter of law.  In assessing the reasonableness of a plaintiff's reliance, the court must consider the plaintiff's level of knowledge, education, and experience.  <u>Guido v. Koopman</u>, 1 Cal.App.4th 837, 843 (1991) (holding that a licensed attorney's reliance on the advice of an equestrian instructor regarding the validity of a release of liability was not reasonable); <u>see</u> <u>also</u> <u>Hyosung Am., Inc. v. Sumagh Textile Co.</u>, 137 F.3d 75, 78-79 (2d Cir. 1998) (noting disinclination to entertain claims of justifiable reliance where the critical information relating to the misrepresentation is discoverable by the means of ordinary intelligence through the performance of due diligence).  Central Sierra is a sophisticated Nevada construction company with experience conducting out-of-state operations, including temporary work in California.  In essence, it is asking this Court to rule that an experienced construction company can rely

on its insurer to determine obligations owed under another state's workers' compensation laws without engaging in an independent inquiry or diligent investigation verifying such obligations.  The Court declines to do so.  See Philipson & Simon v. Gulsvig, 154 Cal.App.4th 347, 363 (2007) ("Reliance is 'justifiable' only when 'circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation.").  Given Central Sierra's knowledge and experience, the Court finds Central Sierra's unquestioned acceptance of Pro Group's alleged representations, without inquiring into the veracity of such representations, unreasonable as a matter of law, and therefore not justified.  Indeed, Central Sierra could have easily verified its obligations under the workers' compensation laws of California by contacting SCIF before it decided to stop paying workers' compensation premiums to California.  This would have been reasonable, especially since Central Sierra had previously paid workers' compensation premiums to California while possessing Nevada workers' compensation coverage.  Therefore, because there is no evidence that would allow a reasonable trier of fact to find otherwise, the question of justifiable reliance is properly resolved on summary judgment. Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 1239-40 (1995) (Although the reasonableness of a party's reliance is usually a question of

fact, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.). Accordingly, because Central Sierra failed to sustain its burden on the element of reasonable reliance, the Court grants summary judgment in favor of Cross-Defendants on Central Sierra's misrepresentation claims.

E.   Claim Three: Indemnification

Cross-Defendants argue that summary judgment is appropriate with respect to Central Sierra's indemnification claim because Central Sierra cannot demonstrate a legal right to indemnity.

The elements for a cause of action for indemnity in California are: "(1) a showing of *fault* on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." Great Western Drywall, Inc. v. Interstate Fire & Casaulty Co., 161 Cal.App.4th 1033, 1041 (2008) (internal quotation marks omitted) (emphasis in original). Because Central Sierra did not offer persuasive argument or authority demonstrating that Cross-Defendants are at fault for its failure to pay California workers' compensation premiums or that Cross-Defendants are contractually or equitably responsible for the resulting damages, the Court grants summary judgment in favor of Cross-Defendants on Central Sierra's indemnification claim.

///

## III. ORDER

For the reasons set forth above, Central Sierra's motion for summary judgment is DENIED and Cross-Defendants' cross-motion for summary judgment is GRANTED. The Clerk of the Court is directed to enter judgment in accordance with this Order.

IT IS SO ORDERED.

Dated: August 19, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE